IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASHONNA SCOTT-PITTS, ) <br> Administrator of the Estate of Jordan Scott, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COUNTY OF COOK, SHERIFF DART, ) <br> PAUL SKIRVAN, SUPERVISING ) <br> PHYSICIAN DR. DOE, MARVA ) <br> DOUGLAS, DALFANITA MOORE, ) <br> FELICIA OGBULI, ANTONIO HUGES, ) <br> and SGT. MAGLAYA, ) <br> ) <br> Defendants. ) | No. 18 C 432 <br><br> Hon. Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

After Jordan Scott died while detained at the Cook County Jail, Plaintiff LaShonna Scott-Pitts, the Administrator of Scott's Estate, brought a civil rights, wrongful death, and medical malpractice action against Cook County; Sheriff Tom Dart; physician's assistant Paul Skrivan; physician Dr. Doe; nurses Marva Douglas, Dalfanita Moore, and Felicia Ogbuli; Corrections Officer Antonio Hughes; and Sargent Stephen Maglaya. Defendants Dart, Hughes, and Maglaya have moved to dismiss Counts I, II, III, and VI as asserted against them. (Dkt. 38). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## **BACKGROUND**[1]

On December 21, 2016, Jordan Scott, a 26-year-old who had recently been arrested, was processed into the Cook County Jail ("CCJ"). (Dkt. 1) at ¶¶ 12–31. As part of this processing, Scott underwent intake health screening procedures and he was referred for a second assessment

---

[1] For purposes of Defendants' motion, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of Plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

due to his past history with asthma. At this second screening, he was prescribed a rescue inhaler by CCJ medical staff and referred for routine primary care in the upcoming weeks. *Id.* at ¶¶ 14–15. Yet, Scott "exhibited obvious symptoms of difficulty breathing" and he unsuccessfully requested additional medical care, doing so by submitting written health service requests on at least five occasions in January 2017, some of which requested immediate medical attention and some of which requested additional and/or different medications to treat his asthma. *Id.* at ¶¶ 16–21. Scott was not provided with any additional or different medications.

Around 7:40 a.m. on January 20, 2017, Scott collapsed in his cell. Defendant Hughes was the first to arrive at the cell, and he observed Scott lying on his side and breathing. Hughes did not render any assistance to Scott. *Id.* at ¶¶ 23–24. Defendant Maglaya next arrived at the cell. He opened the door but provided no assistance. *Id.* at ¶ 25. Next, two nurses arrived and performed CPR on Scott at 7:54 a.m. Scott was pronounced dead at 8:35 a.m., and bronchial asthma was later determined to have been the cause of death. *Id.* at ¶ 26. Plaintiff alleges that Defendants were "specifically on notice as to concerns regarding asthmatic detainees at the CCJ" by way of, among other things, the United States Department of Justice's July 11, 2008 investigative findings into the conditions at the CCJ. *Id.* at ¶ 34; *see also United States v. Cook County*, 10 C 2946 (Dkt. 1-3) (N.D. Ill.) (7/11/08 Letter from Grace Chung Becker and Patrick J. Fitzgerald to Todd Stroger and Thomas Dart). In particular, Plaintiff alleges that the DOJ's 2008 findings indicated that follow-up care and regular monitoring of "peak expiratory flow" are critical for asthmatic persons and that CCJ detainees were not receiving adequate care for their chronic asthma conditions. (Dkt. 1) at ¶¶ 34(a). (b).

Plaintiff filed a nine-count Complaint, asserting a Fourteenth Amendment claim for deliberate indifference to Scott's serious medical needs against all Defendants (Count I); a claim

for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* against Defendants Dart and Cook County for their failure to accommodate Scott's chronic asthma condition (Count II); a municipal 42 U.S.C. § 1983 claim pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) against Defendants Dart and Cook County for their failure to establish numerous policies, practices, and procedures and/or supervise or train employees in providing adequate and necessary medical care (Count III); an Illinois wrongful death claim under 740 ILCS § 180/1 against all Defendants (Count IV); an Illinois survival claim against all Defendants (Count V); an intentional infliction of emotional distress claim against all Defendants (Count VI); a *respondeat-superior* claim against Dart and Cook County (Count VII); a claim for indemnification under the Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102, against Dart and Cook County (Count VIII); and an Illinois medical malpractice claim under 735 ILCS 5/2-622 against Defendants Skrivan, Doe, Douglas, Moore, and Ogbuli (Count IX). *See* (Dkt. 1). Defendants Dart, Hughes, and Maglaya move to dismiss Counts I, II, III, and VI. (Dkt. 38).

## LEGAL STANDARD

For a claim to survive a motion to dismiss brought pursuant to Rule 12(b)(6), it must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendants are liable for the harm. *Id.* That said, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir.

2011) (quoting *Iqbal*, 556 U.S. at 679). For purposes of this motion, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the non-moving party, Plaintiff. *See Killingsworth*, 507 F.3d at 618.

## DISCUSSION

A.  **42 U.S.C. § 1983 Claim (Count I)**

Plaintiff claims that Dart, Hughes, and Maglaya were deliberatively indifferent to Scott's serious medical needs by failing to procure care for his severe asthma in violation of his Fourteenth Amendment rights. Defendants move to dismiss this Count, arguing that Plaintiff cannot state a claim for a violation of Scott's *procedural* due process rights. (Dkt. 38) at 7. But Defendants misunderstand both Plaintiff's claim and the constitutional protections that are afforded to pretrial detainees, such as Scott. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). Yet, "[a]s one moves through the criminal justice system, the constitutional provisions governing one's treatment shift." *Sims v. Olszewski*, 2017 WL 1903121, at *3 (N.D. Ill. May 9, 2017). Specifically, the protections of the Fourth Amendment apply at arrest and until an arrestee has benefitted from a judicial determination of probable cause; then, the Fourteenth Amendment's due process principles apply to pretrial detainees; and finally, the Eighth Amendment applies following conviction. *Ortiz v. City of Chicago*, 656 F.3d 523, 530–31 (7th Cir. 2011); *see also Lopez v. City of Chicago*, 464 F.3d 711 (7th Cir. 2006); *Sims*, 2017 WL 1903121, at *3 (the distinction between arrestee and pretrial detainee is not simply whether a *Gerstein*[2] hearing has been held, but when the

---

[2] *Gerstein v. Pugh*, 420 U.S. 103 (1975).

4

government has made a sufficient showing to justify holding the accused for an extended period).

Therefore, because Plaintiff has alleged that Scott was a pretrial detainee, the deliberate-indifference claim falls under the Fourteenth Amendment's due process clause. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015); *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015); *see also Rosario v. Brawn*, 670 F.3d 816, 820–21 (7th Cir. 2012) (detainees, who are protected by the Fourteenth Amendment, are entitled to at least as much protection as that given to prisoners, who are protected by the Eighth Amendment, even though some differences exist). As it happens, the standard for deliberate indifference under the Fourteenth Amendment is essentially the same as the Eighth Amendment standard. *Burton*, 805 F.3d at 784; *see also Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). In any event, Defendants' sole argument for dismissal of this claim—that Plaintiff cannot state a claim for a procedural due process violation—misses the mark and does not provide grounds for dismissal of Count I at this time. However, as a final point on Count I, the Court takes note of Plaintiff's response, which argues that Count I states a claim against Defendants Hughes and Maglaya. (Dkt. 51) at 9–10. Because Plaintiff appears to admit that she is not bringing Count I against Defendant Dart in his individual capacity, and because she has not levied any allegations of his personal involvement in Scott's medical care and death, *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (to be held liable under § 1983, an individual must have caused or participated in a constitutional deprivation) (citations omitted), Count I is dismissed insofar as it is brought against Dart individually. *See* (Dkt. 1) at ¶ 3 (explaining that the Complaint is brought against Dart in his official and individual capacities).

5

B.  *Monell* **Claim (Count III)**

Next, Plaintiff claims that Dart in his official capacity—that is, the Cook County Sheriff's Department itself, *see Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) ("§ 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department")—was deliberately indifferent to the serious risk that Scott would die from his severe asthma by way of inadequate policies, practices and training. A local government body such as a sheriff's department may not be held liable under § 1983 on a *respondeat-superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, it can be liable under § 1983 if (1) it had an express policy calling for constitutional violations, (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the county caused the constitutional violation. *Id.* at 694; *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). A governmental body is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694; *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (to adequately allege a *Monell* widespread practice claim, a plaintiff must plead factual content that allows the Court to draw the reasonable inference that the municipality maintained a policy, custom or practice that contributed to the alleged violation). In other words, "[t]he critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

6

Here, Plaintiff alleges that Dart is liable under *Monell* for the following 11 widespread practices, in which Dart:

    a.    Failed to establish and/or implement policies, practices and procedures to ensure that detainees at CCJ receive appropriate medical care for serious medical needs, including those detainees suffering from chronic asthma;

    b.    Failed to establish and/or implement policies, practices and procedures to ensure that detainees at CCJ received a complete, thorough, appropriate and adequate assessment of their chronic asthma condition;

    c.    Failed to establish and/or implement policies, practices and procedures to ensure timely, regular, thorough and appropriate follow up monitoring and care for detainees with chronic asthma;

    d.    Failed to establish and/or implement policies, practices and procedures to ensure that detainees receive timely and appropriate medication for serious medical needs, such as chronic asthma;

    e.    Failed to establish and/or implement policies, practices and procedures to ensure that the request for and the receipt of medication was properly and adequately documented;

    f.    Failed to establish and/or implement policies, practices and procedures to ensure that qualified medial personnel timely, regularly and appropriately reviewed medical records for detainees with chronic asthma;

    g.    Failed to establish and/or implement policies, practices and procedures to ensure that nurses or other medical personnel dispensing medications notify physicians or other qualified medical personnel when asthma inhalers are refilled or replaced;

    h.    Failed to adequately monitor the medical conditions of detainees with asthma;

    i.    Failed to ensure through training, supervision and discipline that medical and sheriff staff at CCJ follow policies, practices and procedures with regard to detainees with chronic asthma;

    j.    Failed to ensure through training, supervision and discipline that jail employees and medical staff adequately communicate and document the condition of detainees with chronic asthma;

    k.    Failed to ensure through training, supervision and discipline that jail employees and medical staff properly respond to detainees' chronic asthma.

(Dkt. 1) at ¶ 52.

Without addressing the alleged practices individually, Defendants argue that Plaintiff's *Monell* claim is deficient because only one instance of inadequate medical care is alleged in the Complaint—Scott's lack of medical care from December 2016 to January 2017. (Dkt. 38) at 6. This argument incorrectly oversimplifies the Complaint. To be sure, Plaintiff alleges that Scott's intake exam was deficient and the asthma medicine prescribed was inappropriate, Scott did not receive a timely follow-up appointment, Scott's five written health service requests were inadequately addressed, and Scott received deficient emergency care. (Dkt. 1) at ¶¶ 13–26. In addition, Plaintiff points to the DOJ's 2008 findings regarding the CCJ, which, according to Plaintiff, indicate that "[d]etainees at CCJ were receiving inadequate care for their chronic asthma condition." *Id.* at ¶ 34(b). Taken together, these allegations are sufficient to allege a *Monell* claim for Dart's (1) failure to establish and/or implement policies, practices and procedures to ensure timely, regular, thorough and appropriate follow up monitoring and care for detainees with chronic asthma and (2) to adequately monitor the medical conditions of detainees with asthma. (Dkt. 1) at ¶ 52(c), (h); *see Board of Cty. Commrs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997) (deliberate indifference by a municipality may be shown, for example, where municipal decisionmakers are put on notice that a policy or practice is ineffective and leads to constitutional violations, but they continue to adhere to the same approach); *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (where municipality has "actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction"); *see, e.g., Clay v. Cook Cty.*, 2017 WL 878451, at *3 (N.D. Ill. Mar. 6, 2017) (*Monell* claim sufficient where the plaintiff cited his own experience at the CCJ, the alleged experience of other inmates, alleged admissions from CCJ personnel that this was its policy or practice, and another lawsuit alleging the same alleged policy or practice).

However, the Court reaches a different conclusion with regard to the remaining widespread practices or customs alleged in Paragraph 52. For one thing, some are broadly alleged and not necessarily tied to Scott's experiences at the CCJ. Rather, these allegations appear to rely on speculative inferences about things that may have happened (or not happened) while Scott was a detainee at the CCJ. *See, e.g.*, (Dkt. 1) at ¶¶ 52(e) (failure to document the receipt of medication), (f) (failure to review medical records of detainees with chronic asthma), (j) (failure to communicate and document condition of asthmatic detainees). Not only are these allegations conclusory, they fail to allege the causation element of a *Monell* claim by way of the fact that they are untethered to any factual allegations. *See Glisson*, 849 F.3d at 379 (central question is always whether an official policy, however expressed caused the constitutional deprivation); *Johnson v. Cook Cty.*, 526 F. App'x 692, 695–96 (7th Cir. 2013) (affirming dismissal of *Monell* allegations where allegations could not have been the moving force behind the violation).

Many other allegations of widespread practices and customs in paragraph 52 also are broadly worded and find their only support in the Complaint in Scott's personal experiences. *See, e.g., id.* at ¶¶ 52(a) (failure to provide appropriate medical care for all with serious medical needs), (b) (failure to provide adequate health assessment), (d) (failure to provide timely and appropriate medication), (g) (failure to notify physicians when inhalers need to be refilled), (k) (failure to respond to chronic asthma). Although a plaintiff may rely on his own experience to state a *Monell* claim, *see White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), Plaintiff's allegations in paragraphs 52(a), (b), (d), (e), (f), (g), (j), and (k)—considered along with his Complaint as a whole—lack sufficient factual support to allow the Court to draw the reasonable inference that any of the alleged deficiencies or failures constituted a custom or

9

practice so widespread for which Dart is liable. *McCauley*, 671 F.3d at 616; *see Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (holding that the specific actions of government employees in the plaintiff's case alone, without more, did not create the reasonable inference that a widespread practice existed); *see, e.g., Garcia v. City of Chicago*, 2018 WL 3546742, at *3 (N.D. Ill. July 24, 2018) (dismissing *Monell* allegations where "Garcia has not provided any facts to support his claim that the City maintains a policy or practice of failing to supervise or control its officers and that such a policy or practice caused his injuries."); *Johnson v. Cook Cty. Sheriff's Office*, 2018 WL 2193235, at *4 (N.D. Ill. May 14, 2018) ("Johnson's allegations that he was subjected to inadequate medical care by various nurses and doctors during his stay in the Cook County Jail are also insufficient to state a plausible *Monell* claim.").

And despite the fact that the Complaint references the DOJ's 2008 findings, it only generally references certain findings of inadequate chronic asthma care in that document. *See* (Dkt. 1) at ¶ 34(a), (b). The document is 99 pages long and discusses a broad array of issues at the CCJ, not limited to medical care at the jail. It is not the Court's duty to dig through that document in search of items that may support Plaintiff's various *Monell* allegations. *See, e.g., Carmona v. City of Chicago*, 2018 WL 306664, at *3 (N.D. Ill. Jan. 5, 2018) ("While the DOJ report does discuss deficiencies in the Chicago Police Department's accountability, training, and disciplinary systems, Plaintiff has not alleged, nor does his Response indicate, how the deficiencies described in the DOJ report relate to Plaintiff's claim that police officers illegally handcuffed and interrogated him in a hospital bed and arrested him without probable cause.").

The final remaining alleged practice for consideration is the failure to follow policies, practices, and procedures with regard to detainees with chronic asthma. (Dkt. 1) at ¶ 34(i). This allegation is perplexing, particularly when read along with the other alleged practices in

Paragraph 34, which indicate that CCJ lacked nearly all appropriate policies and practices dealing with asthmatic and ailing detainees. In any event, this allegation contains only conclusory allegations that are not enough to state a plausible *Monell* claim without further factual content, such as which policies and practices were disregarded.

In total, Count III survives to the extent that it alleges Dart's failure to establish and/or implement policies, practices and procedures to ensure timely, regular, thorough and appropriate follow up monitoring and care for detainees with chronic asthma and the failure to adequately monitor the medical conditions of detainees with asthma. (Dkt. 1) at ¶ 52(c), (h). In all other respects, Count III is dismissed.

C.  ADA Claim (Count II)

Turning next to Plaintiff's ADA claim, to state a claim under Title II of the ADA, a plaintiff must allege that he or she: (i) is a qualified individual with a disability; and (ii) was denied the benefit of services, programs, or activities at the prison facility because his disability was not reasonably accommodated. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Boston v. Dart*, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015). Here, Plaintiff alleges that Dart (presumably in his official capacity)[3] failed to accommodate Scott's disability—his chronic and acute asthma—and failed "to modify [the] jail facilities, operations, services, accommodations and programs to reasonably accommodate" Scott's asthma. (Dkt. 1) at ¶ 48. Defendants argue that Plaintiff has failed to state an ADA claim against Defendant Dart because (1) Plaintiff fails to allege that Scott was a "qualified individual with a disability" under the statute, (2) Plaintiff's allegations "are conclusory statements merely reciting elements of an ADA

---

[3] A Title II discrimination claim must be brought against a public entity; a claim seeking damages against an individual cannot be maintained. *Boston*, 2015 WL 4638044, at *2.

11

claim absent factual content," and (3) Plaintiff cannot state an ADA claim for inadequate medical treatment alone. (Dkt. 38) at 3–4.

Even without analyzing whether the Complaint sufficiently alleges that Scott's asthma made him a qualified individual with a disability under the definition provided by 42 U.S.C. § 12131(2), Plaintiff's ADA claim fails for two reasons. First, Plaintiff has offered inadequate backing for her seemingly boilerplate allegations that Scott's asthma was not reasonably accommodated by Dart. For one thing, the Complaint does not specify which services, programs, or activities Scott was denied access to. Nor does it provide sufficient notice to Dart as to what kind of access Scott sought and how Dart denied his requests. *See Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff's Response Brief likewise fails to shed any light on the facts underpinning this claim. *See, e.g.*, (Dkt. 51) at 6 ("Plaintiff also sufficiently states a claim under Title II of the ADA that Defendants discriminated against Jordan Scott and denied him benefits based on his disability in that they refused to provide him with reasonable accommodations."). Although Plaintiff must only plead a "short and plain statement," it must be more detailed than this in order to provide proper notice to Dart. *Cf. Norris v. Godinez*, 2010 WL 2681287, at *1 (N.D. Ill. July 6, 2010) (inmate with various ailments that merited a low bunk permit factually stated ADA claim after he was forced to use the top bunk and he fell and injured himself).

Second, to the extent that the Complaint alleges that Dart failed to accommodate Scott's asthma by providing deficient medical care or treatment, which still is not entirely clear from the Complaint, Plaintiff's ADA claim still fails. *See* (Dkt. 51) at 7 ("Jordan Scott exhibited obvious symptoms of his disability, gasping for air and experiencing difficulty breathing. He and his cell mate requested assistance for him and none was rendered by defendants Hughes or Maglaya.

12

These defendants were put on notice of Jordan Scott's disability and were requested specific assistance with relation to his ability."). Although medical treatment is a "service" under the ADA, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (observing that "prisons provide inmates with . . . medical 'services,' . . . which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')" for purposes of the ADA), the Complaint fails to allege that Scott was denied medical treatment or services "by reason of" his asthma. *See* 42 U.S.C. § 12132; *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996).

In this way, Plaintiff's case is distinguishable from *Stokes v. City of Chicago*, 2018 WL 497365 (N.D. Ill. Jan. 22, 2018). There, the plaintiff, who had a seizure disorder, seized after arrest, and was taken to the hospital immediately before being admitted to the jail, informed the intake officers of his disorder and requested placement in an observable cell. His request was denied, and he endured additional seizures and a possible sexual assault while unconscious while in an unobservable cell, after which his HIV-preventative medication was withheld. *Id.* at *1–2. Considering the defendants' motion to dismiss the plaintiff's ADA claim for failure to accommodate, the Court denied the motion, finding the plaintiff's allegations that "the officers were aware of his disability, he requested accommodation based on his disability and, as a result of their unwillingness to do so, he suffered injuries" sufficient. *Id.* at *3.

Here, without any allegations that Scott was denied treatment by reason of his asthma, Plaintiff's failure-to-accommodate claim is based solely on Scott's receipt of deficient medical care after he had collapsed in his cell. But "a prison official does not violate the ADA when failing 'to attend to the medical needs of . . . disabled prisoners.'" *Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). This was

expressly recognized in *Stokes*, where the Court was clear that the plaintiff was "not attempting to use the ADA as a means of proving medical malpractice." *Id.*; *see also Resel*, 26 F. App'x at 577 ("A claim for inadequate medical treatment is improper under the ADA.") (citation omitted). Rather, the proper avenue for seeking relief for inadequate medical treatment is through Plaintiff's Fourteenth Amendment claim. *See, e.g., Jones v. Bantry Grp. Corp*, 2015 WL 8007512, at *6 (S.D. Ill. Dec. 7, 2015) (dismissing inmate's claim that delay in treating his hernia violated the ADA because even if a hernia is a disability under these statutes, a claim based on allegedly inadequate medical treatment is improper under the ADA). Accordingly, Plaintiff's ADA claim may not proceed against Dart.

**D.     Intentional Infliction of Emotional Distress (Count VI)**

Finally, Defendants challenge Plaintiff's claim that they intended by their actions or inaction to cause Scott severe emotional distress. (Dkt. 38) at 8. Under Illinois law, a claim for intentional infliction of emotional distress requires that the plaintiff show the following: (1) extreme and outrageous conduct by the defendant, (2) either intent to cause distress or knowledge that there was a high probability that the defendant's conduct would cause severe emotional distress, and (3) severe emotional distress that actually resulted. *Dixon v. Cty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003)). In determining whether defendants' conduct reaches the "extreme and outrageous level," courts consider: (1) "the . . . power or control the defendant has over the plaintiff;" (2) "whether the defendant reasonably believed its objective was legitimate;" and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 126 Ill. 2d 78, 88–90 (1998)).

14

First, to the extent that Count VI is brought against Defendant Dart, the Complaint lacks any allegations whatsoever that he exhibited extreme and outrageous conduct, intended to inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress. Count VI therefore cannot survive against Dart.

Next, as to Defendants Hughes and Maglaya, the Complaint alleges that, after Scott collapsed in his cell, both came to the cell but failed and refused to offer any assistance or aid to Scott. (Dkt. 1) at ¶¶ 24–25, 64. In other words, this claim focuses on the allegation that Hughes and Maglaya did not do anything when they encountered Scott collapsed in his cell, and instead waited as many as 14 minutes for CCJ medical personnel to arrive. As the Complaint makes clear, these are the same allegations that support Plaintiff's deliberate indifference claim against Hughes and Maglaya. *See id.* at ¶ 64 ("Defendants . . . engaged in extreme and outrageous conduct . . . by, *inter alia*, refusing and failing to respond to Jordan Scott's serious medical needs and being unreasonable and/or deliberately indifferent to his suffering."). But the standards for deliberate indifference and extreme and outrageous conduct are not necessarily identical. *See, e.g., Dixon*, 819 F.3d at 351 ("The requirement of finding 'extreme and outrageous' conduct is a demanding one, and it will not be met in every instance where a plaintiff has stated a claim under the Eighth Amendment (which itself sets a high bar).").

Here, Plaintiff has failed to set forth sufficient allegations to meet the demanding standard applicable to Count VI. Specifically, even if the Complaint allegations establish conduct that could be considered extreme and outrageous—a question the Court does not address at this time, *see Dixon*, 819 F.3d at 351 ("conduct must 'be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community.") (quoting *Feltmeier*, 207 Ill. 2d at 274)—Plaintiff's claim falters on the second and third elements: that

Hughes and Maglaya intended to inflict emotional distress or knew that it was highly probable and that severe emotional distress actually resulted from their conduct. The Complaint only generically alleges that the Defendants "knew that their conduct would cause [Scott] and his family[4] severe emotional distress" and that "Scott was injured." (Dkt. 1) at ¶¶ 65, 66. But on the knowledge or intent element, the Complaint's only factual allegations concerning Hughes and Maglaya are that they failed to act appropriately upon encountering Scott. *Id.* at ¶¶ 24–25. As such, it is not reasonable to infer that either Defendant intended to cause Scott emotional distress or had knowledge that emotional distress was likely to result. Although Plaintiff argues that it is reasonable to infer that the officers knew of Scott's asthmatic condition or that they were able to observe that Scott had asthma, the Complaint's limited allegations with regard to Hughes and Maglaya simply lack sufficient factual support to draw this connection. (Dkt. 51) at 12.

Further, the Complaint fails to adequately allege that Scott actually suffered severe emotional distress while at CCJ at all, let alone during the short window Hughes and Maglaya are alleged to have been involved with Scott's detention or medical care. As a result, Plaintiff fails to state a claim for intentional infliction of emotional distress against Hughes or Maglaya. All in all, Count VI lacks sufficient allegations to survive against Defendants Dart, Hughes, and Maglaya and it is dismissed as to these Defendants.

## **CONCLUSION**

For the reasons explained above, the Defendants Dart, Hughes, and Maglaya's Motion to Dismiss (Dkt. 38) is granted in part and denied in part. Count I remains pending against Hughes and Maglaya and Count III remains pending against Dart with the limitations explained in this

---

[4] This reference to Scott's family does not factor into the Court's analysis of Count VI. Although LaShonna Scott-Pitts is the Plaintiff in this action, she is named as such only as the Administrator of Scott's estate, not in her personal capacity. No other family members are plaintiffs here, and regardless, the Complaint lacks any allegations that any Defendant knew that his or her actions would cause Scott's family members emotional distress or intended that result.

16

opinion. Counts II is dismissed as to Defendant Dart and Count VI is dismissed as to Defendants Dart. Hughes, and Maglaya.

Date: July 30, 2018

_____
Hon, Virginia M. Kendall
United States District Judge